UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DONALD E. BLIZZARD, JR.,
                                                           :
                              Plaintiff,                          OPINION AND ORDER
                                                           :      03 Civ. 10301 (GWG)
         -v.-

                                                           :

MICHAEL J. ASTRUE, Commissioner of
Social Security,                                           :

                              Defendant.          :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**


APPEARANCES OF COUNSEL:

Charles E. Binder
Binder & Binder
215 Park Avenue South, 6th Floor
New York, NY 10003
Attorney for Plaintiff

Susan D. Baird
Assistant United States Attorney
86 Chambers Street
New York, NY  10007
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONALD E. BLIZZARD, JR.,

                     :

          Plaintiff,                    OPINION AND ORDER

                     :        03 Civ. 10301 (GWG)

     -v.-

                     :

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,               :

          Defendant.       :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Donald E. Blizzard brought this action to obtain judicial review of the final decision of

the Commissioner of Social Security denying his claim for disability insurance benefits and

Supplemental Security Income ("SSI").  In a previous opinion, the Court found that Blizzard was

disabled and granted Blizzard's motion to remand the case for a calculation of benefits.

Blizzard's counsel now moves for attorney's fees pursuant to 42 U.S.C. § 406(b).  He seeks to

obtain 25% of the past-due benefits recovered by Blizzard in accordance with the contingency

fee arrangement in Blizzard's retainer agreement – a request that would result in payment to

counsel of $705 per hour spent on the federal court case.  The Commissioner objects to the fee as

excessive.

      The parties have consented to this matter being determined by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the request for the fee is

granted.

---

[1] Michael J. Astrue is substituted as defendant pursuant to Fed. R. Civ. P. 25(d)(1).

I. <u>BACKGROUND</u>

      A. <u>Blizzard's Claim for Benefits and Procedural History</u>

      Blizzard filed an application for disability insurance benefits on November 3, 1999 and a claim for SSI benefits on April 4, 2000. <u>See</u> <u>Blizzard v. Barnhart</u>, 2005 WL 946728, at *1 (S.D.N.Y. Apr. 25, 2005). Blizzard's application was denied initially and on reconsideration. Blizzard subsequently obtained a hearing before an administrative law judge ("ALJ"), who found that Blizzard was not disabled. The Appeals Council granted Blizzard's request for review and remanded the case to the ALJ for reconsideration. Following a second hearing, the ALJ again denied Blizzard's claims for benefits. The Appeals Council denied Blizzard's request for review.

      On December 31, 2003, Blizzard filed the instant complaint seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). <u>See</u> Complaint (Docket #1). After the parties moved for judgment on the pleadings, this Court found that Blizzard was disabled and remanded the case for a calculation of benefits. <u>See</u> <u>Blizzard</u>, 2005 WL 946728, at *17.

      As a result of the Court's decision awarding benefits, the Commissioner has directed that Blizzard is to receive an ongoing award of approximately $1600 per month. <u>See</u> Corrected Notice of Award (attached as Ex. A to Affirmation, dated Apr. 4, 2007 ("Binder Aff.") (attached to Notice of Motion, filed Apr. 6, 2007 (Docket #17) ("Not. of Mot."))), at 1. In addition, Blizzard was awarded past-due benefits of approximately $1400-$1600 per month beginning in April 1999 and continuing through December 2005. Blizzard's notice reflects that he was entitled to a total payment of $107,193 for past-due benefits, of which he has been paid $80,394.75. The remainder, $26,798.25, or 25% of the total award, was withheld as a potential

attorney's fee.

B.  <u>The Instant Motion</u>

Blizzard's counsel seeks the $26,798.25 as attorney's fees for work performed by two attorneys who represented Blizzard in the federal court proceedings.  <u>See</u> Not. of Mot.; Binder Aff.; Memorandum of Law in Support of Plaintiff's Petition for Attorney Fees Pursuant to 42 U.S.C. § 406(b)(1) (attached to Not. of Mot.).  Blizzard had agreed to pay 25% of his award of past benefits when he entered into a retainer agreement with his counsel.  Binder Aff. ¶ 1.  Recently, he also gave his written consent to his counsel receiving it now.  <u>See</u> Letter from Donald E. Blizzard, Jr., dated Jan. 30, 2007 ("Blizzard Letter") (attached to Letter from Charles E. Binder, filed May 8, 2007 (Docket #19)).  The Commissioner opposes the application in a letter.  <u>See</u> Letter from Susan D. Baird, dated Apr. 18, 2007.  He notes that the time records reflect that counsel spent 38 hours on the federal court litigation.  He asserts that the amount sought by counsel is "excessive," although he cites to no case or other authority in support of this argument.  He contends that a fee award between $9,500 and $11,400 would be appropriate based on an hourly rate of $250 to $300 per hour.

II.  <u>DISCUSSION</u>

Pursuant to statute, "[w]henever a court renders a judgment favorable to a claimant . . . who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation," but that fee may not exceed "25 percent of the total of the past-due benefits to which the claimant is entitled."  <u>See</u> 42 U.S.C. § 406(b)(1)(A).  "Because benefits amounts figuring in the fee calculation are limited to those past due, attorneys may not gain additional fees based on a claimant's continuing

entitlement to benefits."  Gisbrecht v. Barnhart, 535 U.S. 789, 795 (2002).

The Supreme Court in Gisbrecht rejected the use of the traditional "lodestar" method of calculating attorney's fees (that is, the number of hours reasonably expended times a reasonable hourly rate) in cases under section 406(b) where the parties have entered into a contingent fee arrangement.  Id. at 799-808.  It articulated instead the following standard for review:

> § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court.  Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases. Congress has provided one boundary line: Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits. § 406(b)(1)(A) (1994 ed., Supp. V).  Within the 25 percent boundary, as petitioners in this case acknowledge, the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered.

Id. at 807 (footnotes omitted).

Thus, under Gisbrecht, courts "approach contingent-fee determinations by first looking to the agreement between the attorney and the client, and then testing that agreement for reasonableness."  Joslyn v. Barnhart, 389 F. Supp. 2d 454, 456 (W.D.N.Y. 2005) (citing Gisbrecht, 535 U.S. at 808); accord Colegrove v. Barnhart, 435 F. Supp. 2d 218, 219 (W.D.N.Y. 2006); Boyd v. Barnhart, 2002 WL 32096590, at *2 (E.D.N.Y. Oct. 24, 2002).  In making this determination, one court has pointed to the following factors, derived from Gisbrecht:

> 1) whether the requested fee is out of line with the "character of the representation and the results the representation achieved;" 2) whether the attorney unreasonably delayed the proceedings in an attempt to increase the accumulation of benefits and thereby increase his own fee; and 3) whether "the benefits awarded are large in comparison to the amount of time counsel spent on the case," the so-called "windfall" factor.

Joslyn, 389 F. Supp. 2d at 456 (quoting Gisbrecht, 535 U.S. at 808).

The first two factors weigh in favor of approving the fee request.  The briefing in this

4

case was on point, effective, and achieved the greatest possible success for the claimant.  Thus, the award is in line with the character and results of the representation.   Nor did counsel engage in any delay of the proceedings  – delay that might have artificially increased past due benefits and thus the potential attorney fee award.  Indeed, while the Commissioner requested and was granted two extensions of deadlines, Blizzard did not request any.

With respect to the third factor – whether the award constitutes a "windfall[]," Gisbrecht, 535 U.S. at 808 (quoting Rodriquez v. Bowen, 865 F.2d 739, 747 (6th Cir. 1989)) – Gisbrecht stated:

> [i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order . . . . In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.

Id. (citations omitted).

In other words, Gisbrecht mandates that where "benefits" (presumably meant to be a proxy for the contingent fee sought) are "large" in comparison with the hours spent by counsel, a court must make a downward adjustment in the fee request.  As a result, Gisbrecht requires a consideration of the time actually spent on the case by the attorney in order to assess the reasonableness of the contingent fee sought – though Gisbrecht simultaneously made clear that fees should not be awarded based on a traditional lodestar analysis.  See id. at 799-808.  Gisbrecht does not, however, require that a court consider the lawyer's "normal hourly billing rate"; it states only that a court "may" do so.  See id. at 808.

On the "windfall" question, the court in Joslyn considered the following factors:

5

> 1) whether the attorney's efforts were particularly successful for the plaintiff, 2) whether there is evidence of the effort expended by the attorney demonstrated through pleadings which were not boilerplate and through arguments which involved both real issues of material fact and required legal research, and finally, 3) whether the case was handled efficiently due to the attorney's experience in handling social security cases.

Joslyn, 389 F. Supp. 2d at 456-57 (citing Boyd, 2002 WL 32096590, at *2; Lacatena v. Sec'y of Health & Human Servs., 785 F. Supp. 319, 322 (N.D.N.Y. 1992)).  Applying these factors here, they too weigh in favor of the fee request.  Blizzard's counsel were particularly successful in that they achieved an award of benefits even after Blizzard's application had been denied multiple times at the agency level.  Counsel submitted a detailed, non-boilerplate brief in support of Blizzard's case.  One of his counsel, Charles Binder, has extensive experience in the social security field, including litigating "thousands of administrative hearings and hundreds of Federal Court appeals"; serving as past president of the New York Social Security Bar Association; appearing as a continuing legal education speaker; and editing a book chapter on Social Security. See Binder Aff. ¶ 7.  In addition, counsel had begun representing Blizzard in March 2000 and represented him throughout his administrative proceedings.  See id. ¶ 6.  Based on counsel's experience in the Social Security field and their lengthy involvement in Binder's own administrative proceedings, counsel were able to handle this complex case with far great efficiency than an inexperienced attorney.  See generally Maier v. Apfel, 1998 WL 401536, at *2 (S.D.N.Y. July 17, 1998) ("The plaintiff's counsel should not be penalized for working efficiently on the case as compared to other attorneys who might have taken longer to perform the same work and whose corresponding hourly rate would be lower due to their lack of experience and productivity.").

The three factors listed above from Joslyn, however, are not sufficient to conduct the

6

analysis required by Gisbrecht.  Gisbrecht mandates that a court consider whether the claimant's

past due benefits are "large in comparison to the amount of time counsel spent on the case."  535

U.S. at 808.  There seems no way to analyze this issue other than to consider the per hour rate

that results from dividing the fee sought by the number of hours counsel spent on the case.  In

this case, that rate is $705 per hour.

      If we were to judge the $705 rate as part of a traditional "lodestar" analysis, there is little

doubt that it could not be justified by reference to a market rate for services in Social Security

litigation and plaintiff has made no attempt to so justify it.  With respect to counsel's "normal

hourly billing charge" – the rate adverted to in Gisbrecht – counsel have not disclosed these

rates.  Nor has the Court asked them to do so.  (Nor, as pointed out previously, does Gisbrecht

require that they be submitted.)   Indeed, it is quite likely that, if counsel's practice is exclusively

devoted to contingency cases and to the receipt of statutory attorney's fees, they do not even

have a "normal hourly billing charge" in the sense of a rate at which they bill and receive

payment from clients.   If we were to look instead to the rate paid to litigators in Manhattan

generally, this Court's own knowledge of rates suggests that the net rate sought here, $705 per

hour, is less than the rate regularly paid to some very highly-compensated attorneys and perhaps

seven times the rate regularly paid to others.

      In an exhaustive opinion, one court in California surveyed post-Gisbrecht cases

nationally to determine how the decision was being applied.  See Ellick v. Barnhart, 445 F.

Supp. 2d 1166 (C.D. Cal. 2006).  Ellick found that the net hourly rates approved (even if the

court did not actually perform the calculation) ranged from $20.31 per hour to $982 per hour.  Id.

at 1169-71.  It further found that attorneys were being compensated at anywhere from 1.01 to

6.55 times their normal billing rate.  Id. at 1169-70, 1173.

Ellick concluded that there was no uniform approach.  It reduced the award sought in that

case from a rate of $933 per hour, or 4.24 times the attorney's normal billing rate, to $550 per

hour, which was 2.5 times the attorney's normal billing rate.  Id. at 1172-73.  Ellick chastised

itself, however, for the "regrettable imprecision of its analysis," noting that its opinion gave

"little explanation for the size of the downward adjustment to 2.5 times the lodestar figure.  Why

is 2.5 necessarily the appropriate factor for an uncomplicated Social Security case?  Would a

factor of 2.0 or 3.0 be equally reasonable or unreasonable?  Why or why not?  It is easier to rule

than to explain."  Id. at 1173 & n.20.[2]

In this case, we do not feel called upon to calculate what specific multiple of an actual

billing rate (or reasonable billing rate) is represented by the $705 per hour figure.  A court is not

required to articulate its judgment as to reasonableness in terms of a mathematical formula.  Cf.

BMW of N. Am. v. Gore, 517 U.S. 559, 582 (1996) (determination of whether ratio of punitive

to compensatory damages is "reasonable" not reducible to a "simple mathematical formula").  A

strong consideration underlying the estimation of the reasonableness of the fee sought by counsel

here is the Court's belief that  "[d]eference should be given . . . to the 'freely negotiated

---

[2] The difficulty of the court's task was predicted by the dissent in Gisbrecht, which noted that the
majority had required courts considering a contingency fee application to

> commence [their] analysis with the contingent-fee agreement, but then to adjust
> the figure that agreement produces on the basis of factors (most notably, the
> actual time spent multiplied by a reasonable hourly rate . . . ) that are, in a sense,
> the precise antithesis of the contingent-fee agreement, since it was the very
> purpose of that agreement to eliminate them from the fee calculation.

535 U.S. at 809 (Scalia, J., dissenting) (emphasis in the original).

expression both of a claimant's willingness to pay more than a particular hourly rate . . . and of an attorney's willingness to take the case despite the risk of nonpayment.'"  Joslyn, 389 F. Supp. 2d at 456 (quoting Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990)).  Inasmuch as statutory fee awards are available only for successful litigants, a contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners.  As was stated by the Second Circuit, "[i]n the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk."  Wells, 907 F.2d at 371; accord Joslyn, 389 F. Supp. 2d at 456 ("When assessing the reasonableness of [a contingency fee payment], a court should balance the interest in protecting claimants from inordinately large fees against the interest in ensuring that attorneys are adequately compensated so that they continue to represent clients in disability benefits cases.") (citing Gisbrecht, 535 U.S. at 805).  Thus, a reduction in the agreed-upon contingency amount should not be made lightly.

While we can imagine a situation where the net hourly rate resulting from a contingency award might be so outside the bounds of reasonableness as to require a reduction, that is not the case here.  In light of the fact that, as already discussed, the many factors for judging reasonableness identified by courts have been satisfied in this case, the fact that Blizzard's case was not a sure winner, and the importance of encouraging attorneys to accept social security cases on a contingency basis, the Court concludes that the award sought here is not so large in relation to the hours expended by counsel that it requires reduction.  Nor is there any other basis on which to find the award unreasonable.

Conclusion

The Court awards $26,798.25 to Blizzard's counsel as attorney's fees pursuant to

42 U.S.C. § 406(b).  The Clerk is requested to enter a judgment so reflecting.

SO ORDERED.

Dated: July 20 2007
        New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Charles E. Binder
Binder & Binder
215 Park Avenue South, 6th Floor
New York, NY 10003

Susan D. Baird
Assistant United States Attorney
86 Chambers Street
New York, NY  10007

Conclusion

The Court awards $26,798.25 to Blizzard's counsel as attorney's fees pursuant to

42 U.S.C. § 406(b).  The Clerk is requested to enter a judgment so reflecting.

SO ORDERED.

Dated: July 20, 2007
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Charles E. Binder
Binder & Binder
215 Park Avenue South, 6th Floor
New York, NY 10003

Susan D. Baird
Assistant United States Attorney
86 Chambers Street
New York, NY  10007

10